UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>00-6309-CR-SEITZ(S)</u>(S)

18 U.S.C. 1962(d)
18 U.S.C. 1963
18 U.S.C. 1955
18 U.S.C. 1956
18 U.S.C. 1957
18 U.S.C. 1511
18 U.S.C. 894
18 U.S.C. 892
18 U.S.C. 2



FILED by ___ D.C.
IN TAKE

AUG 1 4 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

UNITED STATES OF AMERICA,          )
                     Plaintiff,    )
                                   )
v.                                 )
                                   )
JOHN MAMONE,                       )
     aka "Big John,"               )
JOSEPH RUSSO,                      )
     aka "JR,"                     )
FRED MORGENSTERN,                  )
DAVID MORGENSTERN,                 )
JOSEPH SILVESTRI,                  )
MICHAEL BUCCINNA,                  )
     aka "Mikey Boots,"            )
DAVID BELL,                        )
JOHN O'SULLIVAN,                   )
     aka "Johnnie O,"              )
MARK WEISS,                        )
MARK CARATTINI,                    )
ANSON KLINGER,                     )
FREDERICK SCAROLA                  )
CHARLES CLAY,   and                )
DOREEN RUSSO,                      )
                                   )
                     Defendants.   )
_____    )

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

517/8

## GENERAL ALLEGATIONS

1.    At times material to each count of this Indictment, Check Cashing Unlimited, Inc., d/b/a Check Cashing Unlimited, was a Florida corporation, whose business was located at 5701 Margate Blvd., Margate, Florida. Check Cashing Unlimited was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of repeated criminal activity.

2.    At times material to each count of this Indictment, Gold Coast Check Cashing, Inc. was a Florida corporation, whose businesses were located at 5701 Margate Blvd., Margate, Florida, and at 3591 North Andrews Ave., Oakland Park, Florida, among other locations.  Gold Coast Check Cashing, Inc. was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of repeated criminal activity.

3.    At times material to each count of this Indictment, Checking Exchange, Inc., d/b/a Check Cashing Unlimited II, was a Florida corporation, whose business was located at 2603  N.  Dixie Highway, Wilton Manors, Florida.  Check Cashing Unlimited II was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of several criminal acts.

4.    At times material to each count of this Indictment, Akel of  Boca   Raton,   Inc.,   d/b/a  Akel's  Market,  was  a  Florida corporation, whose business was located at 504 N.W. 6th Street,

2

Pompano Beach, Florida. Akel's Market was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of several criminal acts.

5.   At times material to each count of this Indictment, Gateway Transportation Services, Inc., was a Florida corporation, whose business was located at 7770 W. Oakland Park Blvd., Sunrise, Florida. Gateway Transportation Services was engaged in arranging for transportation of goods throughout the United States, as well as providing telephones and vehicles to members of the criminal enterprise to facilitate the commission of several racketeering acts.

6.   At times material to each count of this Indictment, International Mercantile Corporation, a/k/a IMC, Ltd., and IGT, Ltd., International Forex Exchange, were entities not registered to do business in the State of Florida. These entities were used to facilitate a telemarketing fraud operation within the Southern District of Florida.

7.   At times material to each count of this Indictment, Americas International Bank Corporation, Limited (AIBC), was a bank registered to do business in the Bahamas, which was located in Nassau, Bahamas.

3

## COUNT 1

### INTRODUCTION

At all times relevant to this Indictment:

1.    The members and associates of the Trafficante Organized Crime Family of La Cosa Nostra (hereafter referred to as "the Trafficante Family"), were a criminal organization that operated in the Southern District of Florida, Tampa, Florida, and elsewhere.

2.    The Trafficante Family operated through groups of individuals headed by "captains," who were referred to as "capos" or "skippers." These groups, which were referred to as "crews," and "regimes," consisted of "made" members of the Trafficante Family, who were also referred to as "soldiers," and of non-member criminal associates of the Family.

3.    In the Southern District of Florida, Steve Raffa operated and maintained a "crew" for the Trafficante Family that engaged in various criminal acts, including loansharking, extortion, money laundering, bank fraud, dealing in stolen property and illegal gambling, among other crimes.  The "crew" was directly supervised by defendant JOHN MAMONE who reported directly to Steve Raffa. This "crew" consisted of  certain non-member criminal associates of the Trafficante Family.

4.    The Federal Bureau of Investigation conducted undercover investigations in which cooperating witnesses, who previously had been associated with organized crime groups that operated in the Southern District of Florida and elsewhere, worked in an undercover capacity for the purpose of gathering evidence concerning the

4

criminal activities of the members as described below, as well as others engaged in criminal activities on behalf of other racketeering enterprises.

## THE ENTERPRISE

5.    At all times relevant to this Indictment, in the Southern District of Florida and elsewhere, defendants JOHN MAMONE, JOSEPH RUSSO, FRED MORGENSTERN, DAVID MORGENSTERN, JOSEPH SILVESTRI, MICHAEL BUCCINNA, DAVID BELL, JOHN O'SULLIVAN, MARK CARATTINI, ANSON KLINGER, and MARK WEISS and other persons constituted an enterprise within the meaning of Title 18, United States Code, Section 1961 (4), that is, a group of individuals associated in fact.  The purpose of the enterprise was to enrich its members through various criminal activities, including the making and collecting of extortionate loans, interference of commerce by threats of violence, money laundering, obstruction of state and local law enforcement, the operation of illegal gambling businesses, bank fraud, mail and wire fraud, the sale and receipt of stolen goods, interstate and foreign travel in aid of racketeering, obstruction of justice and through the collection of unlawful debt.

## THE CONSPIRACY

6.    From in or about 1995, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of the return of the Indictment, in the Southern District of Florida and elsewhere, the defendants,

JOHN MAMONE,
JOSEPH RUSSO,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
MICHAEL BUCCINNA,
DAVID BELL,
JOHN O'SULLIVAN,
MARK WEISS,
MARK CARATTINI, and
ANSON KLINGER,

together with others, being persons employed by and associated with the enterprise described in paragraph 5 of this Count, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally did combine, conspire, confederate, and agree together, and with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as defined by Title 18, United States Code, Sections 1961(1) and (5) as set forth in paragraph 7 below, and through the collection of unlawful debts as defined by Title 18, United States Code, Section 1961(6), and as set forth in paragraph 8 below.

## PATTERN OF RACKETEERING ACTIVITY

7.    The pattern of racketeering activity that the defendants agreed would be committed in the conduct of the affairs of the enterprise consisted of multiple acts involving violations of the following laws:

A.    Sale and receipt of stolen goods, in violation of and indictable under Title 18, United States Code, Section 2315;

6

B.    Engaging in monetary transactions in property derived from specified unlawful activity and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Sections 1956 and 1957;

C.    Laundering of monetary instruments and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Section 1956;

D.    Conducting, financing, managing, supervising and directing illegal gambling businesses, in violation of and indictable under Title 18, United States Code, Section 1955;

E.    Interstate travel or transportation in aid of racketeering enterprises, in violation of and indictable under Title 18, United States Code, Section 1952;

F.    Obstruction of state and local law enforcement, in violation of and indictable under Title 18, United States Code, Section 1511;

G.    Bank fraud, in violation of and indictable under Title 18, United States Code, Section 1344;

H.    Mail fraud, in violation of and indictable under Title 18, United States Code, Section 1341;

I.    Wire fraud, in violation of and indictable under Title 18, United States Code, Section 1343;

J.    Collection of extensions of credit by extortionate means and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Section 894;

K.    Making extortionate extensions of credit and

7

conspiracy to do so, in violation of and indictable under Title 18, United States Code, Section 892; and,

L.    Obstruction of Justice, in violation of and indictable under Title 18, United States Code, Section 1503.

### COLLECTION OF UNLAWFUL DEBT

8.    The collection of unlawful debt through which the defendants and their coconspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise consisted of the collection from various individuals of unlawful debts, as that term is defined by Title 18, United States Code, Section 1961(6), to wit: a) a debt which was incurred and contracted in gambling activity and which was incurred in connection with the business of gambling, which activity and business were in violation of the laws of the United States and Florida; and b) debts which were unenforceable under State and Federal law in whole and in part as to principal and interest because of the laws relating to usury and which were incurred in connection with the business of lending money at a rate usurious under State and Federal law, where the usurious rate was at least twice the lawfully enforceable rate.

### MANNER AND MEANS OF THE CONSPIRACY

9.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two racketeering acts, or participate in the collection of at least one unlawful debt, in conducting the affairs of the enterprise.

8

10.    It was further part of the conspiracy that defendant JOHN MAMONE would supervise and direct members of the conspiracy in the commission of various criminal acts as set forth in paragraph 7, above, for the economic benefit of the members of the enterprise.

11.    It was further part of the conspiracy that Steve Raffa and defendants JOHN MAMONE and MICHAEL BUCCINNA would supervise and coordinate the activities of the large-scale illegal gambling business that was operated by defendants MARK CARATTINI, ANSON KLINGER, and other coconspirators for the benefit of the enterprise.

12.    It was further part of the conspiracy that defendants MICHAEL BUCCINNA, MARK CARATTINI, ANSON KLINGER and other coconspirators would manage the day-to-day operation of the illegal gambling business on behalf of defendant JOHN MAMONE, which included the collection of gambling debts, among other activities.

13.    It was further part of the conspiracy that defendant JOHN MAMONE and other co-conspirators involved in the illegal gambling business would use a corrupt City of Margate police officer, to obstruct state and federal law enforcement investigations of the illegal gambling business being operated by the enterprise.

14.    It was part of the conspiracy that defendants JOHN MAMONE, MICHAEL BUCCINNA, DAVID BELL, JOHN O'SULLIVAN, MARK WEISS, and other coconspirators would operate a loanshark business that involved making extortionate loans to borrowers and using threats of violence and physical violence in collecting debts from either

9

borrowers or losing bettors who incurred gambling debts to the enterprise.

15. It was further part of the conspiracy that defendant JOHN MAMONE and other coconspirators would negotiate counterfeit checks through check cashing stores under the control of the enterprise for the purpose of generating profits.

16. It was further part of the conspiracy that defendant JOHN MAMONE, DAVID BELL, JOHN O'SULLIVAN and other coconspirators would obtain and sell stolen property for the purpose of generating substantial profits on behalf of the enterprise.

17. It was further part of the conspiracy that defendants JOHN MAMONE, FRED MORGENSTERN, MICHAEL BUCCINNA, and other coconspirators would supervise and control the business operations of check cashing stores located in South Florida for the purpose of promoting and concealing the criminal activities engaged in by members of the enterprise.

18. It was further part of the conspiracy that defendants JOHN MAMONE, FRED MORGENSTERN, MICHAEL BUCCINNA, MARK WEISS and other coconspirators would use check cashing stores controlled by the enterprise as a means of collecting illegal proceeds from loanshark borrowers and losing bettors who were victims of the enterprise.

19. It was further part of the conspiracy that defendants JOHN MAMONE, FRED MORGENSTERN and other coconspirators would obtain substantial funds from area banks by initiating "check kiting" schemes that would engender operating funds for the enterprise.

10

20.    It was further part of the conspiracy that defendants JOHN MAMONE, DAVID BELL and other coconspirators would provide assistance to other coconspirators in the operation of telemarketing fraud schemes.

21.    It was further part of the conspiracy that defendants JOHN MAMONE, JOSEPH RUSSO, MICHAEL BUCCINNA, MARK WEISS and other coconspirators would provide the services of various check cashing stores for the purpose of promoting the operation and concealment of the illegal proceeds derived from telemarketing fraud committed by other coconspirators and other persons for the enrichment of the enterprise.

22.    It was further part of the conspiracy that defendants JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, JOSEPH SILVESTRI, MICHAEL BUCCINNA, DAVID BELL, MARK WEISS and other coconspirators would assist a criminal group operating in South Carolina, which engaged in an investment fraud scheme involving mail and wire fraud in return for a share of the illegal proceeds obtained from investor/victims.

23.    It was further part of the conspiracy that the criminal group from South Carolina would send and transport personal checks in an aggregate amount exceeding $30,000,000 in criminally derived property obtained from defrauded investor/victims throughout the United States to defendants JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, MICHAEL BUCCINNA and other coconspirators for the purpose of promoting the investment fraud scheme and concealing the

location of the criminally derived proceeds for the benefit of the enterprise.

24.  It was further part of the conspiracy that defendants JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, JOSEPH SILVESTRI, MICHAEL BUCCINNA, MARK WEISS and other coconspirators would further assist the criminal group from South Carolina by causing the depositing of personal checks from investor/victims into accounts maintained by the enterprise's check cashing stores.

25.  It was further part of the conspiracy that defendants FRED MORGENSTERN, DAVID MORGENSTERN, JOSEPH SILVESTRI and other coconspirators would assist the criminal group from South Carolina by transferring the illegally derived funds through various financial institutions in South Florida to bank accounts in the Bahamas, England and Switzerland.  Said defendants were involved in these transactions for the purpose of promoting the investment fraud scheme and concealing the location of the criminally derived proceeds from the victim/investors and law enforcement for the benefit of the enterprise.

26.  It was further a part of the conspiracy that defendant JOHN O'SULLIVAN would corruptly endeavor to obstruct justice by attempting to persuade another member of the enterprise not to provide truthful information and testimony to United States relating to the criminal involvement of other members of the enterprise.

27.  It was further part of the conspiracy that coconspirators would take all steps necessary to prevent the detection by law

enforcement of the criminal activities for the benefit of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

1.    From in or about 1995, and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants,

JOHN MAMONE,
MICHAEL BUCCINNA,
MARK CARATTINI,
ANSON KLINGER,
CHARLES CLAY,

and other persons known and unknown to the Grand Jury, knowingly conducted, financed, managed, supervised, directed, and owned all or part of an illegal gambling business which involved five or more persons who conducted, financed, managed, supervised, directed, and owned, all or part of such business and which had a gross revenue of two thousand dollars ($2,000) or more on one or more single day and was in substantially continuous operation for a period in excess of thirty days, and which business was in violation of the laws of the State of Florida, Section 849.25 and other applicable law.

All in violation of Title 18, United States Code, Sections 1955 and 2.

## COUNT 3

1.    From in or about 1999, and continuing thereafter up to and including January 30, 2001, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FREDERICK SCAROLA,
CHARLES CLAY,

and other persons unlawfully, willfully and knowingly did combine, conspire, confederate and agree together with each other and with others known and unknown to the Grand Jury to obstruct the enforcement of the criminal laws of the State of Florida, that is, Section 849.25 Florida Statutes and other applicable laws, with the intent to facilitate an illegal gambling business.

2.    At all times during the course of the conspiracy, defendant CHARLES CLAY was an appointed official of the State of Florida, that is, a sworn police officer of the City of Margate, Florida, Police Department.

3.    At all times during the course of the conspiracy, the defendant JOHN MAMONE and other coconspirators conducted, supervised, directed, and owned all or part of an illegal gambling business in Broward County, which said business included but was not limited to bookmaking in violation of the laws of the State of Florida.

4.    At all times during the course of the conspiracy, the defendant FREDERICK SCAROLA and other coconspirators conducted, supervised, directed, and owned all or part of an illegal gambling business in Broward County, which said business included but was

14

not limited to bookmaking in violation of the laws of the State of Florida.

5.    At all times during the course of the conspiracy, the illegal gambling business involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business, and the business remained in substantially continuous operation for a period in excess of thirty days.

<b><u>OVERT ACTS</u></b>

In furtherance of the conspiracy and to effect the objects thereof, the defendants and their coconspirators committed in the Southern District of Florida, at least one of the following overt acts, among others.

1.    On or about February 4, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA advised defendant JOHN MAMONE that defendant CHARLES CLAY had recently learned that the FBI was investigating Gold Coast Check Cashing located in Margate, Florida.

2.    On or about February 4, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA informed another person that there was a source with the Margate Police Department who warned FREDERICK SCAROLA of an FBI investigation of Gold Coast Check Cashing in Margate, Florida.

3.    On or about February 11, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA informed another person that based upon information provided by a Margate police officer that members of the illegal gambling business should refrain from visiting Gold Coast Check Cashing in Margate, Florida, because the

business was under investigation by the FBI.

4.    On February 11, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA met with defendant CHARLES CLAY at Bobby Rubino's Restaurant in North Lauderdale, Florida.

All in violation of Title 18, United States Code, Section 1511.

### COUNT 4

1.    From in or about 1996, and continuing thereafter up to the date of this Indictment, in the Southern District of Florida, and elsewhere, the defendants,

> JOHN MAMONE,
> JOSEPH RUSSO,
> MICHAEL BUCCINNA,
> DAVID BELL,
> JOHN O'SULLIVAN, and
> MARK WEISS,

did knowingly conspire, confederate, and agree with each other and with other persons, known and unknown to the Grand Jury to make extortionate extensions of credit as defined by Title 18, United States Code, Section 891, to numerous individuals in South Florida,

All in violation of Title 18, United States Code, Section 892(a).

### COUNT 5

From in or about 1996, and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants,

> JOHN MAMONE,
> JOSEPH RUSSO,
> MICHAEL BUCCINNA,

16

DAVID BELL,
JOHN O'SULLIVAN, and
MARK WEISS,

did knowingly and intentionally conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to participate in the use of extortionate means to collect and attempt to collect extensions of credit as defined by Title 18, United States Code, Section 891, from numerous individuals in South Florida.

All in violation of Title 18, United States Code, Section 894(a)(1).


## COUNT 6

1.    From in or about 1997, and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,
MICHAEL BUCCINNA,
MARK CARATTINI, and
ANSON KLINGER,

did knowingly conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

### THE PURPOSE AND OBJECT OF THE CONSPIRACY

2.    It was the purpose and object of the conspiracy to knowingly and willfully conduct and attempt to conduct financial

17

transactions affecting interstate and foreign commerce, that is, the cashing of checks which involved the proceeds of specified unlawful activity, that is, illegal gambling businesses, in violation of Title 18, United States Code, Section 1955, and extortionate credit transactions, in violation of Title 18, United States Code, Sections 892 and 894; and with the intent to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and  control of the proceeds of said specified unlawful activities and knowing that the property involved represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 7

1.    From in or about 1998, and continuing thereafter up to and including in or about January 2000, at Broward County, in the Southern District of Florida and elsewhere, the defendants,

JOHN MAMONE, and<br>
MICHAEL BUCCINNA,

did knowingly conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 1957.

## THE PURPOSE AND OBJECTS OF THE CONSPIRACY

2.   It was the purpose and object of the conspiracy to knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, that is the cashing of checks obtained through a foreign currency exchange investment fraud, which involved the proceeds of specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities and knowing that the property involved represented the proceeds of some form of unlawful activity.

3.   It was also the purpose and object of the conspiracy to knowingly and willfully engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property that was of a value greater than $10,000, which was derived from specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, which property was obtained from a foreign currency exchange investment fraud.

All in violation of Title 18, United States Code, Section 1956(h).

19

## COUNT 8 - 10

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, the defendant,

JOHN MAMONE,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a foreign currency exchange fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 8 | November 10, 1999 | $30,000.00 | Negotiation at Akel's Market of check Number #002567209, payable to International Mercantile Corp. drawn on account at the Huntington Bank. |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|---------------------|
| 9 | November 10, 1999 | $20,000.00 | Negotiation at Akel's Market of check Number #002567210 payable to International Mercantile Corp. drawn on account at the Huntington Bank. |
| 10 | November 17, 1999 | $30,000.00 | Negotiation at Akel's Market of check Number #002567221, payable to International Mercantile Corp. drawn on Account at Huntington Bank. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 11 - 13

1.   On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, the defendant,

JOHN MAMONE,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States

21

Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was obtained from a foreign currency exchange investment fraud and lottery scheme.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 11 | July 7, 1999 | $11,189.80 | Deposit of three checks payable to IGT, Inc., International Gaming Trust, and International Gaming & Trust into account of Check Cashing Unlimited II, at Pointe Bank. |
| 12 | July 28, 1999 | $15,000.00 | Deposit of check payable to IGT, Inc. into account of Check Cashing Unlimited II, at Republic Security Bank. |
| 13 | December 1, 1999 | $30,000.00 | Deposit of three checks payable to International Mercantile Corp. into account of Check Cashing Unlimited II, at Republic Security Bank. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 14

1.    From in or about July 1999, and continuing thereafter up to and including in or about November 2000, at Broward County, in the Southern District of Florida and elsewhere, the defendants,

JOHN MAMONE,
JOSEPH RUSSO,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
MICHAEL BUCCINNA,
DAVID BELL,
MARK WEISS, and
DOREEN RUSSO,

did knowingly and intentionally conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 1957.

## THE PURPOSE AND OBJECTS OF THE CONSPIRACY

2.   It was a purpose and object of the conspiracy to knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, that is the cashing of checks obtained from a South Carolina based investment fraud, which involved the proceeds of specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities and knowing that the property involved represented the proceeds of some form of unlawful activity.

3.   It was also a purpose and object of the conspiracy to knowingly and willfully engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property that was of a value greater than $10,000, which was derived from specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code,

23

Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, which property was obtained from a South Carolina based investment fraud.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 15

1.    On or about September 21, 1999, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,

and other persons did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, that is the exchange of twenty-one monetary instruments in the amount of approximately $1,046,451, such property having been derived from specified unlawful activities, that is, mail fraud in violation of Title 18, United States Code, Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343, which property was obtained from a South Carolina based investment fraud.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 16 - 45

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
MICHAEL BUCCINNA,
MARK WEISS,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was obtained from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 16 | August 9, 1999 | $2,800,000.00 | Outgoing wire transfer from Admiralty Bank to Barclays Bank, New York for AIBC at Barclays Bank, the Bahamas |
| 17 | September 29, 1999 | $261,914.21 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 18 | October 5, 1999 | $577,296.94 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 19 | October 12, 1999 | $297,000.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 20 | October 12, 1999 | $449,578.26 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 21 | October 12, 1999 | $262,259.16 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 22 | October 12, 1999 | $250,940.77 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 23 | October 20, 1999 | $425,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclays Bank, London, England, Account Number 63772677 |
| 24 | October 22, 1999 | $266,602.02 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 25 | October 28, 1999 | $233,294.52 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 26 | November 3, 1999 | $550,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclays Bank, London, England, Account Number 63772677 |
| 27 | November 4, 1999 | $1,000,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclays Bank, London, England, Account Number 63772677 |
| 28 | November 5, 1999 | $500,000.00 | Withdrawal of funds by check drawn on the account of Americas Resource Citibank |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 29 | November 15, 1999 | $1,000,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclays Bank, London, England, Account Number 63772677 |
| 30 | November 15, 1999 | $402,137.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 31 | November 16, 1999 | $292,244.32 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 32 | November 17, 1999 | $350,000.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 33 | November 18, 1999 | $500,000.00 | Withdrawal of funds by check drawn on the account of Americas Resource Citibank |
| 34 | December 1, 1999 | $374,180.24 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 35 | December 7, 1999 | $1,250,174.70 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 36 | December 15, 1999 | $258,654.13 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 37 | December 17, 1999 | $500,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclays Bank, London, England, Account Number 63772677 |
| 38 | December 20, 1999 | $500,000.00 | Withdrawal of funds by check drawn on the account of Americas Resource Citibank. |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 39 | December 21, 1999 | $651,567.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 40 | December 21, 1999 | $598,990.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 41 | December 22, 1999 | $827,689.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 42 | December 23, 1999 | $300,358.99 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 43 | December 28, 1999 | $622,159.55 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 44 | December 29, 1999 | $297,019.68 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 45 | December 31, 1999 | $500,000.00 | Withdrawal of funds by check drawn on account of Americas Resource Citibank |

All violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 46 - 47

1.   On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|----------------------|
| 46 | December 21, 1999 | $313,284.47 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 0020012751 at Peninsula Bank in the name of Gold Coast Check Cashing |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|-----------------------|
| 47 | December 23, 1999 | $50,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 0020012751 at Peninsula Bank in the name of Gold Coast Check Cashing |

All violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS 48 - 49

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,
MARK CARATTINI,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18,

United States Code, Section 1343, which property was from a South
Carolina based investment fraud.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|----------------------|
| 48 | December 21, 1999 | $50,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 0055226706 at Bank Atlantic in the name of Premier Tickets, Inc. |
| 49 | January 19, 2000 | $70,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07A02 titled J. M. & Sons Enterprises, Inc. into account number 0055226706 at Bank Atlantic in the name of Premier Tickets, Inc. |

All violation of Title 18, United States Code, Sections 1957
and 2.

## COUNTS 50 - 53

1.  On or about the dates enumerated as to each of these
Counts of the Indictment, in the Southern District of Florida, and
elsewhere, the defendants,

JOHN MAMONE,<br>
JOSEPH RUSSO,<br>
FRED MORGENSTERN,<br>
DOREEN RUSSO,

and other persons did knowingly engage and attempt to engage and
did aid and abet, counsel, command, induce, and procure and cause
the engaging and attempts to engage in the following monetary
transactions in various amounts, as described below, each

transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 50 | January 12, 2000 | $100,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 1090007136287 at First Union Bank in the name of DOREEN RUSSO |
| 51 | January 12, 2000 | $100,000.00 | Negotiation of check payable to Linda DiCamillo from the account of DOREEN RUSSO at First Union Bank |
| 52 | April 10, 2000 | $30,000.00 | Negotiation of check from a Merrill Lynch account of J.M.& Son Enterprises, Inc. payable to DOREEN RUSSO |
| 53 | October 10, 2000 | $142,000.00 | Deposit of check payable to DOREEN RUSSO into account of DOREEN RUSSO at First Union National Bank |

All violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 54 - 55

1.   On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,<br>
FRED MORGENSTERN,<br>
DAVID BELL,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 54 | February 3, 2000 | $100,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07A02 titled J. M. & Sons Enterprises, Inc. into account number 55971657 at Bank Atlantic in the name of Gateway Transportation. |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 55 | February 10, 2000 | $75,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07A02 titled J. M. & Sons Enterprises, Inc. into account number 55971657 at Bank Atlantic in the name of Gateway Transportation. |

All violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE

1.    Count 1 of this Indictment is realleged and hereby incorporated herein by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1963.

Through the pattern of racketeering activity, defendants

JOHN MAMONE,
JOSEPH RUSSO,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
MICHAEL BUCCINNA,
DAVID BELL,
JOHN O'SULLIVAN,
MARK CARATTINI,
ANSON KLINGER, and
MARK WEISS,

i.    acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.    an interest in, security of, claims against, and property and contractual rights which afford a source of influence over the enterprise named and described herein which they established, operated, controlled, conducted, and participated in the conduct

2.    Counts 6 through 55 of this Indictment are realleged and hereby incorporated by reference herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982. As a result of the offenses charged in Counts six through fifty of this Indictment, defendants

JOHN MAMONE,<br>
JOSEPH RUSSO,<br>
FRED MORGENSTERN,<br>
DAVID MORGENSTERN,<br>
JOSEPH SILVESTRI,<br>
MICHAEL BUCCINNA,<br>
DAVID BELL,<br>
MARK WEISS<br>
MARK CARATTINI,<br>
ANSON KLINGER, and<br>
DOREEN RUSSO,

shall forfeit to the United States all property, real and personal, involved in the aforesaid offenses and all property traceable to such property, as to which property the defendants are jointly and severally liable, including but not limited to the following:

A.    All property to be forfeitable in paragraphs 1(A) through 1(F) of the Forfeiture Section of this Indictment relating to Count One of this Indictment, as set forth above, which is incorporated herein by reference as if set forth in full.

If any of the above-described forfeitable property as a result of any act or omission of a defendant or the defendants:

1.    cannot be located upon the exercise due diligence;

2.    has been transferred to, sold to, or deposited with a third person;

3.    has been placed beyond the jurisdiction of the court;

4.    has been substantially diminished in value; or

5.    has been commingled with other property which cannot be

37

subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek forfeiture of any other property of said defendants up to the value of the above-described forfeitable property, including but not limited to:

(a)    One parcel of real estate located at 1960 Augusta Terrace, Coral Springs, Florida;

(b)    One parcel of real estate known as 7534 Estrella Circle, Boca Raton, Florida;

(c)    One parcel of real estate located at 4973 NW 115th Terr, Coral Springs, Florida.

(d)    One parcel of real estate located at 7705 Andes Lane, Parkland, Florida.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY

DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

38

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

**CASE NO.** _____00-6309-CR-SEITZ(S)(S)_____

v.

**CERTIFICATE OF TRIAL ATTORNEY***

JOHN MAMONE, et al

**Superseding Case Information**:

**Court Division**: (Select One)

| | | |
|---|---|---|
| ____ | Miami | ____ Key West |
| x | FTL | ____ WPB ____ FTP |

New Defendant(s)          Yes  _x_     No ____
Number of New Defendants      _3_
Total number of counts        _55_

I do hereby certify that:

1.     I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.     I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.     Interpreter:        (Yes or No) _No_____
       List language and/or dialect   _____

4.     This case will take  _30_  days for the parties to try.

5.     Please check appropriate category and type of offense listed below:
       (Check only one)                              (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | __x__ | Felony | __x__ |
| V | 61 days and over | _____ | | |

6.     Has this case been previously filed in this District Court? (Yes or No)  _Yes_
If yes:
Judge: _Patricia A. Seitz_____     Case No. _00-6309-Cr-Seitz(s)_____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) _No_____
If yes:
Magistrate Case No.  _____
Related Miscellaneous numbers: search warrants 00-4603-Snow & 00-4604-Snow_____
Defendant(s) in federal custody as of _n/a_____
Defendant(s) in state custody as of  _____
Rule 20 from the  _____     District of  _____

Is this a potential death penalty case? (Yes or No) _No_____

7.     Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes  _X_ No    If yes, was it pending in the Central Region? _X_ Yes ___ No

8.     Did this case originate in the Narcotics Section, Miami? ___ Yes  _X_ No

J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY
COURT I.D.# A5500084

*Penalty Sheet(s) attached

REV.6/27/00

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   JOHN MAMONE

Count #: 1      18 U.S.C. 1962(d)     Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2      18 U.S.C. 1955        Illegal Gambling Business

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 3      18 U.S.C. 1511        Obstruction of state and local investigation

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 4      18 U.S.C. 892(a)      Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 5      18 U.S.C. 894(a)(1)   Conspiracy to use Extortionate Means to Collect Extensions of Credit

*Max. Penalty:   20 years' imprisonment and up to a $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   JOHN MAMONE

Counts #: 6 - 7 & 14        18 U.S.C. 1956(h)    Money Laundering Conspiracy

_____

*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 8 -13; 15 - 55    18 U.S.C. 1957    Engaging in Monetary Transactions in Property  Derived from Specified Unlawful Activities

_____

*Max. Penalty:  10 years' imprisonment and up to a $250,000 fine

Count #:

_____

*Max. Penalty:

Count #:

_____

*Max. Penalty:

Count #:

_____

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   JOSEPH RUSSO

Count #: 1          18 U.S.C. 1962(d)          RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 4          18 U.S.C. 892(a)          Conspiracy  to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:  5          18 U.S.C. 894(a)(1)     Conspiracy  to use Extortionate Means to Collect Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 14          18 U.S.C. 1956(h)        Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 50 - 53    18 U.S.C. 1957          Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   FRED MORGENSTERN

Count #: 1          18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Counts #: 6 & 14    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 15 - 55   18 U.S.C. 1957    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   DAVID MORGENSTERN

Count #: 1          18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 14         18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 16 - 45   18 U.S.C. 1957       Engaging in Monetary Transactions in Property
                                         Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   JOSEPH SILVESTRI

Count #: 1            18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 14           18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 16 - 45    18 U.S.C. 1957    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   MICHAEL BUCCINNA

Count #: 1          18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2          18 U.S.C. 1955      Illegal Gambling Business

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 4          18 U.S.C. 892(a)    Conspiracy  to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 5          18 U.S.C. 894(a)(1)  Conspiracy  to  use Extortionate Means to Collect Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Counts #: 6 - 7 & 14  18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   MICHAEL BUCCINNA

Counts #: 16 - 45     18 U.S.C. 1957      Engaging in Monetary Transactions in Property
                                          Derived from Specified Unlawful Activities

_____

_____

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine
_____

Count #: _____

_____

*Max. Penalty: _____

Count #: _____

_____

*Max. Penalty: _____

Count #: _____

_____

*Max. Penalty: _____

Count #: _____

_____

*Max. Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## **PENALTY SHEET**

Defendant's Name:   DAVID BELL

Count #: 1             18 U.S.C. 1962(d)          RICO Conspiracy

---

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 4             18 U.S.C. 892(a)        Conspiracy  to Make Extortionate Extensions of Credit

---

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:  5            18 U.S.C. 894(a)(1)   Conspiracy  to use Extortionate Means to Collect Extensions of Credit

---

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 14           18 U.S.C. 1956(h)     Money Laundering Conspiracy

---

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 54 - 55     18 U.S.C. 1957        Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

---

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   JOHN O'SULLIVAN

Count #: 1          18 U.S.C. 1962(d)          RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 4          18 U.S.C. 892(a)    Conspiracy  to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:  5         18 U.S.C. 894(a)(1)  Conspiracy  to use Extortionate Means to Collect Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   MARK WEISS

Count #: 1          18 U.S.C. 1962(d)          RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 4          18 U.S.C. 892(a)      Conspiracy  to Make Extortionate Extensions of
                                          Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:  5         18 U.S.C. 894(a)(1)  Conspiracy  to use Extortionate Means to Collect
                                         Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:  14        18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds
involved in the transaction

Counts #: 16 - 45   18 U.S.C. 1957       Engaging in Monetary Transactions in Property
                                         Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:  MARK CARATTINI

Count #: 1          18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #:2          18 U.S.C. 1955      Illegal Gambling Business

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 6          18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 48 - 49   18 U.S.C. 1957      Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# <u>PENALTY SHEET</u>

Defendant's Name:   ANSON KLINGER

Count #: 1              18 U.S.C. 1962(d)    Rico Conspiracy

---

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #:2              18 U.S.C. 1955        Illegal Gambling Business

---

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 6              18 U.S.C. 1956(h)    Money Laundering Conspiracy

---

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:

---

*Max. Penalty:

Count #:

---

*Max. Penalty:

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:  FREDERICK SCAROLA

Count #:  3      18 U.S.C. 1511        Obstruction of state and local investigation

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   CHARLES CLAY

Count #:  2    18 U.S.C. 1955        Illegal Gambling Business

\*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #:  3    18 U.S.C. 1511        Obstruction of state and local investigation

\*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>

Defendant's Name:   DOREEN RUSSO

Count #: 14          18 U.S.C. 1956(h)    Money Laundering Conspiracy

_____

_____

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 50 - 53    18 U.S.C. 1957    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

_____

_____

*Max. Penalty:  10 years' imprisonment and up to a $250,000 fine

Count #:

_____

_____

*Max. Penalty:

Count #:

_____

_____

*Max. Penalty:

Count #:

_____

_____

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

No. _____

# UNITED STATES DISTRICT COURT

## Southern District of Florida
### Central Criminal Division

## THE UNITED STATES OF AMERICA

vs.

JOHN MAMONE,
JOSEPH RUSSO,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
MICHAEL BUCCINNA,
DAVID BELL,
JOHN O'SULLIVAN,
MARK WEISS,
MARK CARATTINI,
ANSON KLINGER,
FREDERICK SCAROLA,
CHARLES CLAY, and
DOREEN RUSSO

## INDICTMENT

| | |
|---|---|
| 18 U.S.C. 1962(d) | 18 U.S.C. 894 |
| 18 U.S.C. 1956 | 18 U.S.C. 2 |
| 18 U.S.C. 1963 | 18 U.S.C. 1957 |
| 18 U.S.C. 1955 | 18 U.S.C. 1511 |

A true bill,

_____
Foreperson

Filed in open court this _____

of _____ A.D. 20____ day,

_____
Clerk

Bail, $ _____

BLG

U.S. District Court
FLS - Southern District of Florida FtLauderdale

CRIMINAL DOCKET FOR CASE #: 00-CR-6309

USA v. Raffa, et al.
Assigned to: Patricia A. Seitz                                      Filed: 10/24/00

Dkt # in other court: None

| | | |
|---|---|---|
| 08/14/01 | 516 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/14/01 | 517 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/14/01 | 518 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/14/01 | 519 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/14/01 | 520 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/15/01 | 512 | SEALED DOCUMENT (sp) [Entry date 08/16/01] |
| 08/15/01 | 513 | SEALED DOCUMENT (sp) [Entry date 08/16/01] |
| 08/15/01 | 514 | ORDER as to John Mamone  denying [413-1] motion to alter certain conditions of pretrial release as to John Mamone (2) ( Signed by Magistrate Stephen T. Brown on 8/14/01) [EOD Date: 8/16/01] CCAP☐ (dg) [Entry date 08/16/01] |
| 08/15/01 | 521 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/15/01 | 522 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/16/01 | 523 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/17/01 | 524 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/17/01 | 525 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/17/01 | 526 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/17/01 | 527 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/17/01 | 528 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/17/01 | 529 | SEALED DOCUMENT (sp) [Entry date 08/21/01] |
| 08/20/01 | 515 | NOTICE of filing letter regarding pending discovery issues by Fred Morgenstern (dg) [Entry date 08/21/01] |

Attached to D.E. # 517